UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JANA MARIE ALLEN-BUCKLES,         Case No. 1:20-cv-602

    Plaintiff,        Bowman, M.J.

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents a single claim of error for this Court's review.[1] As explained below, the Court will AFFIRM the ALJ's finding of non-disability, because it is supported by substantial evidence in the record as a whole.

**I. Summary of Administrative Record**

In September 2017, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging disability beginning on March 3, 2017 due to a combination of physical impairments including a back injury, migraines, seizures, a knee injury, left eye blindness and low vision in her right eye, cataract, a neck injury, and depression. (Tr. 190).[2] In her

---

[1] The parties have consented to final disposition before the undersigned magistrate judge in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.
[2] Both parties in this case cite solely to PageID numbers, without reference to the Administrative Transcript. Local Rule 7.2(b)(3) requires pinpoint citations to PageID numbers "[e]xcept for Social Security cases...." (emphasis added). For Social Security cases, Local Rule 8.1.A(d) requires parties to "provide pinpoint citations to the administrative record, regardless of whether a party also chooses to provide PageID citations." The Court has converted all PageID references to the corresponding Administrative Transcript (Tr.) citation, and strongly urges counsel to comply with LR 8.1.A in the future.

1

initial function report, she focused on her inability to bend, stoop, lift, walk, kneel or crawl, along with eyesight issues that allegedly limited her ability "to do full nursing abilities." (Tr. 239). After her claim was denied initially and upon reconsideration, Plaintiff requested an evidentiary hearing before an Administrative Law Judge ("ALJ"). On July 16, 2019, Plaintiff appeared pro se[3] in Frankfort, Kentucky and gave testimony before ALJ Boyce Crocker. A vocational expert also testified. (Tr. 38-90).

Plaintiff was 56 years old on the alleged disability onset date and remained in the "advanced age" category through the date of the ALJ's decision. She has a bachelor's degree and two master's degrees, in business administration and in healthcare administration. (Tr. 54). She is divorced and currently lives with her mother in a house.[4] She has past relevant work as a nurse and as the Director of Nursing at several facilities. Consistent with her application, she initially testified that she cannot work primarily because she cannot bend or stoop due to her knee pain and back pain.[5] (Tr. 191). However, she subsequently testified that her "incapacitating" migraines were worse than other impairments. (Tr. 72, 75).

On October 2, 2019, the ALJ issued an adverse written decision, concluding that Plaintiff is not disabled. (Tr. 25-33). The ALJ determined that Plaintiff has severe impairments of migraines and right knee pain, but found that none of her other alleged impairments (including cataracts status-post laser surgery, back pain, being overweight, and seizures) imposed "more than a slight or minimal limitation" and therefore were not

---

[3]Plaintiff, a highly educated nurse, does not dispute that she voluntarily and unequivocally waived her right to representation.
[4]Plaintiff separated from her former husband in April 2017, and her divorce became final during the pendency of the administrative proceedings. (Tr. 172, 191).
[5]Plaintiff additionally cited to her low vision. However, her vision issues largely resolved with cataract surgery, and she does not rely upon her non-severe vision issues in this proceeding.

"severe." (Tr. 28). In this judicial appeal, Plaintiff does not challenge those findings, nor does she dispute the finding that none of her impairments, either alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability.

After considering all of Plaintiff's severe and non-severe impairments, the ALJ determined that Plaintiff retained a Residual Functional Capacity ("RFC") that permits her to perform a range of sedentary work, subject to the following additional limitations:

> can occasionally climb ramps and stairs, no ladders, ropes or scaffolds, can occasionally stoop, not kneel, crouch and crawl; and avoid concentrated exposure to vibration, unprotected heights and moving machinery.

(Tr. 28).

Considering Plaintiff's age, education, and RFC, and based on testimony from the vocational expert, the ALJ determined that Plaintiff could still perform her past relevant work as Director of Nursing as that job is generally performed under Dictionary of Occupational Titles ("DOT") standards, though not as Plaintiff previously performed it. (Tr. 31). Therefore, the ALJ determined that Plaintiff was not under a disability. (Tr. 33). The Appeals Council denied further review, leaving the ALJ's decision as the final decision of the Commissioner.

In this appeal, Plaintiff argues that the ALJ erred by failing to include additional functional limitations based upon her chronic migraines. I find no reversible error.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent

3

the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can

4

still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

### B. Plaintiff's Claim of Error

Plaintiff seeks remand for further development of the record concerning her alleged limitations from her migraine headaches. The Court finds the record to have been fully developed, and further finds the ALJ's assessment of Plaintiff's RFC, including his assessment of limitations from her headaches, to be substantially supported.

#### 1. Plaintiff's Pro Se Status Does Not Require Remand

Through current counsel, Plaintiff prefaces her argument with a reminder that an ALJ has a "heightened duty to develop the record when the claimant is unrepresented" as Plaintiff was before the ALJ in this case.[6] (Doc. 11 at 2, citing *Lashley v. Sec'y, HHS*, 708 F.2d 1048, 1051-52 (6th Cir. 1983). However, cases in which a social security claimant elects to proceed pro se must be evaluated on a case-by-case basis. *Lashley* involved an "inarticulate" plaintiff of "limited intelligence" who "appeared to be easily

---

[6]Although she appeared pro se before the ALJ, Plaintiff was represented before the Appeals Council by an advocate. (*See* Tr. 7, 91-92).

5

confused," and an ALJ who swiftly concluded the hearing after 25 minutes without asking critically relevant questions. *Id*. By contrast, Plaintiff is very articulate and highly educated, with two master's degrees. Notably, she points to nothing in the record that suggests it was inadequately developed in any way, whether through a failure to obtain medical records or through any inadequacies in questioning Plaintiff about her impairments. Having closely examined the hearing transcript, the Court notes that the ALJ was painstakingly thorough in his approach, pausing to define any regulatory terms that might otherwise be unfamiliar to Plaintiff, and asking many follow-up questions (as well as inviting Plaintiff to ask questions) to ensure that the record was fully developed. Therefore, Plaintiff's pro se status is irrelevant to her primary claim of error: whether the ALJ's RFC was substantially supported in relation to her migraines.

### 2. Plaintiff Failed to Carry her Burden to Show the Need for Additional Limitations, and the ALJ's Analysis is Substantially Supported

It was Plaintiff's burden to prove what, if any, limitations she experiences from her migraines. Plaintiff asserts that the record shows an increase in her headaches over time, and that after March 2017, she was experiencing migraine headaches from between 4 and 20 times per month based upon reports to her treating neurologist of 1 to 5 headaches per week. (*See*, *e.g.*, Tr. 317, 437). Based upon the frequency of her migraines, she maintains that her RFC should have included some percentage of an "off-task" limitation and/or an absence limitation of an indeterminate number of days per month.[7] She further suggests that the ALJ should have included a limitation to reduce light and noise exposure

---

[7] Plaintiff cites to the VE's testimony that if she were off task 10 percent or more of the workday, she would be precluded from work. (Tr. 85-86). But without proof that Plaintiff required such an off-task limitation, the VE's testimony is immaterial.

6

based upon her testimony that when she gets a migraine at home, she goes to bed and turns out the lights. (Tr. 73).

Based on the record presented, the Court finds the existence of substantial evidence to support the ALJ's determination that Plaintiff required nothing more than the limitations that were included in her RFC. Plaintiff does not challenge the findings that her migraines were a "severe" impairment at Step 2 that did not meet Listing level severity at Step 3. At Step 4, the ALJ fully examined the objective and clinical evidence in the medical records, Plaintiff's subjective reports, and a function report submitted by her mother, before formulating her RFC. Plaintiff fails to point to any persuasive evidence that would sustain her burden to show she required any greater limitations.

Plaintiff suggests that the ALJ erred when he failed to find <u>any</u> migraine-related limitations at all. (Doc. 11 at 10, 12). Plaintiff is mistaken. The ALJ's written opinion states that he "considered the limitations caused by [Plaintiff's] migraine headache impairments and accounted for those limitations in part by specifically adding postural and environmental restrictions to an already reduced range of sedentary exertional work activity…." (Tr. 30). The referenced limitations included "no ladders, ropes, or scaffolds" and no concentrated exposure to "vibration, unprotected heights and moving machinery." (Tr. 28).

Plaintiff also points to Social Security Ruling ("SSR") 19-4p, published just before the ALJ's decision, which offers agency guidance regarding the evaluation of headaches. *Id.*, 2019 WL 4169635 (Aug. 26, 2019). Urging this Court to assume that her migraines would mandate an "off task" limitation "while a migraine is occurring," (*see* Doc. 11 at 8), Plaintiff argues that SSR 19-4p does not require objective evidence to determine functional limitations. (Doc. 11 at 11-12). Again, Plaintiff is mistaken. SSR 19-4p

7

explicitly states that "[c]onsistency and supportability between reported symptoms and objective medical evidence is key in assessing the RFC." *Id.*, at *8.

### The ALJ's Evaluation of the Medical Evidence

Next, Plaintiff criticizes the ALJ's evaluation of the medical evidence. The ALJ began by summarizing the objective and clinical evidence from Plaintiff's treating neurologist, Dr. Anderson, beginning before the alleged disability period (2013 and 2016) and continuing with records dated after her alleged disability onset date of March 2017. Plaintiff accuses the ALJ of cherry picking that evidence by "omitting critical facts" and "highlighting less salient ones" (Doc. 11 at 9). Plaintiff herself highlights records that suggest that the frequency of her headaches increased and that, over time, she began to experience headaches more frequently during the day rather than solely at night. She points out that Dr. Anderson changed and increased her medications over time as a result. (Tr. 76-77, 308, 321, 325, 426, 439; *see also* Tr. 321, 435, 437, 443).

This Court cannot reweigh conflicting evidence. *Brainard v. Sec'y of HHS*, 889 F.2d 679, 681 (6th Cir. 1989). Claims that ALJs "cherry picked" evidence are "seldom successful" because this Court must affirm so long as substantial evidence exists in the record as a whole to support the ALJ's decision. *See DeLong v. Com'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014). In fact, Plaintiff's own focus on selected records could also be described as "cherry picking."

Having examined the referenced records, including those highlighted by Plaintiff, the Court finds no misstatement by the ALJ in the following summary:

> The medical evidence does not fully support the claimant's allegations of limitations due to migraine headaches. In December 2013, Greg Anderson, M.D. noted the claimant reported increased stress and that she had been waking up in the early morning with "quite a few

8

> headaches." Dr. Anderson listed that the claimant had been having migraine headaches every night at two o'clock for the past few weeks due to increased stress (8F/75). In April 2016, Dr. Anderson noted the claimant complained of seizures and migraines. The provider listed that her 2009 brain MRI and EEG showed normal findings; and that the claimant mainly experienced nocturnal migraines that were increased by stress (IF/1-5)….
>
> In March 2017, Dr. Anderson noted the claimant's statement that she had been doing well. Dr. Anderson listed that her migraine headache symptoms had often increased with stress. Upon exam, the provider found the claimant's cranial nerves, motor tone, strength, and gait were normal. Dr. Anderson reported that the claimant's migraines had been doing much better with her current medication dosage but noted that her headaches had often worsened in the past when her medication dosage was decreased. This evidence shows that the claimant's headache symptoms improved with treatment and medication.
>
> In September 2017, Dr. Anderson noted the claimant was separated from her spouse, had lost her job, and had been having more frequent migraines. Upon exam, the provider found the claimant's cranial nerves, motor tone, strength, and gait were normal. Dr. Anderson listed that the claimant had been having recurrent migraines that had worsened with stress. Dr. Anderson adjusted her medications and instructed her to follow up in six months (IF/14-18, 8F/39). In March 2018, Dr. Anderson noted the claimant's statement that she had been under a lot of stress and her migraines had been the same. Upon exam, the provider found the claimant's cranial nerves, motor tone, and strength were normal, but she had a mildly antalgic gait. Dr. Anderson listed that the claimant had experienced a moderate number of migraine headaches but that they had somewhat improved. Dr. Anderson instructed her to follow up in six months (8F/34-37). In September 2018, Dr. Anderson noted the claimant's chief complaints were seizures and back pain. Upon exam, the provider found the claimant's cranial nerves, motor tone, and strength were normal, but she had a mildly antalgic gait. Dr. Anderson listed that her migraines had increased with stress, but Topamax had caused improvement (8F/24-26).

(Tr. 29-30). A February 10, 2019 record similarly reflects Plaintiff's report to Dr. Anderson that her headaches were "better than last visit" and improved on increased Topamax. (Tr. 426).

After reviewing the foregoing records, the ALJ pointed out that Plaintiff's treatment was "mostly routine… with medication management at three and six-month

9

treatment intervals," and that "her symptoms and frequency [of migraines] have increased or decreased with her stress level," including significant stressors such as her separation from her husband, job loss, domestic abuse, and moving in with her mother. (Tr. 30). The Court finds no error in the ALJ's consideration of evidence that the frequency of Plaintiff's headaches appeared to relate to short-term stressors such as a job loss and divorce from an abusive husband who had "pulled a gun on her." (Tr. 30, citing Tr. 321; *see also* Doc. 11 at 5 (describing "abusive" ex-husband and headaches as particularly bad with stress)).[8] The ALJ explained that limitations arising from non-fatal impairments must have lasted or be expected to last for a continuous period of at least 12 months. Plaintiff testified that stress was a trigger for her headaches, (Tr. 76), and Dr. Anderson's records consistently note the high correlation between Plaintiff's increased stress level at any particular office visit and her migraine frequency.

The ALJ additionally explained that he assessed a non-disabling degree of functional limitations based upon "the lack of more aggressive treatment, substantial objective findings, evidence of related hospitalizations or significant findings from specialist," which "suggests the claimant's symptoms and limitations were not as severe as she alleged." (Tr. 30). He noted that her "allegations regarding her symptoms and limitations … are greater than expected in light of the objective evidence of record." (*Id.*) Plaintiff criticizes the ALJ's reference to a lack of "aggressive" treatment, arguing that she regularly received treatment from Dr. Anderson with

---

[8]One of the same stressors caused short-term "situational depression," which the ALJ found to be non-severe. Plaintiff testified that once she "[g]ot rid of my husband," her depression no longer affected her and she discontinued her antidepressant. (Tr. 75).

medication adjustments throughout the years, without ever obtaining full remission of her migraines.  However, the mere existence of migraines – even if frequent - does not prove disability.  Particularly in chronic pain cases, courts have found a "history of conservative treatment for [her] alleged disabling pain" to be "probative record evidence" that a plaintiff was not disabled.  *McKenzie v. Com'r of Soc. Sec.*, 2000 WL 687680 at *4 (6th Cir. May 19, 2000).

      Plaintiff insists that the medical evidence supports a level of frequency and severity in her migraines that would have supported an "off-task" limitation.  It does not.  Apart from Dr. Anderson's clinical records which were accurately summarized and do not reference any "off-task" limitations, there was no medical opinion evidence whatsoever to support any additional functional limitations.  In other words, no treating, examining, or consulting source opined that Plaintiff would have any specific "off-task" or absence limitations, or noise or light restrictions. (*See* Tr. 28, 31, 101-104, 117-119).  In fact, no treating, examining or consulting physicians opined that Plaintiff required <u>any</u> specific work-related limitations pertaining to her migraines beyond what the ALJ included – a fact that standing alone provides strong evidence to uphold the RFC as determined.  *See Morgan v. Com'r of Soc. Sec.*, 2021 WL 3560578, at *3 (S.D. Ohio Aug. 11, 2021) (affirming non-disability finding where insufficient medical evidence justified greater RFC limitations for migraines); *Jeter v. Com'r of Soc. Sec.,* 2020 WL 5587115, at *3 (S.D. Ohio Sept. 18, 2020) (affirming non-disability finding despite failure to include additional restrictions based on migraines because "[n]o medical source opined that her migraines and associated symptoms would cause her to be off task more than ten percent of time or absent two or more times a month.").

In the absence of supporting RFC opinions, Plaintiff points to a disability form, dated June 21, 2018, in which Dr. Anderson endorsed a statement that Plaintiff was "<u>temporarily</u> disabled or incapacitated" until such time as she could receive a spine evaluation. (Tr. 421, emphasis added). On the same form, he states that he treats Plaintiff for seizures ("controlled") and for recurrent migraines which are "poorly controlled [and] would <u>limit</u> gainful employment." (Tr. 422, emphasis added). Crucially, Dr. Anderson does not state that Plaintiff's migraines would wholly *prohibit* employment. And he offers no guidance as to how her migraines would "limit" her (i.e. he offers no functional limitations). Whether an individual is disabled is reserved to the Commissioner; therefore, Dr. Anderson's "disability" opinion was not the type of medical opinion that the ALJ was required to consider. *See generally*, *Turner v. Com'r of Soc. Sec.*, 381 Fed. Appx. 488, 492 (6th Cir. 2010); 20 C.F.R. § 404.1527(d)(1).

In any event, the form completed by Dr. Anderson reflects that he believed Plaintiff was disabled either due to her back pain or a combination of back pain and migraines, not migraines alone. A contemporaneous clinical record explains:

> She is applying for disability, pending. She brought a form to sign plan[n]ing <u>the main cause for her disability is her low back</u>. I did sign for temporary disability while she could get a full spine evaluation which she will do at UK as she ow has her Medicaid insurance
>
> I did indicate on the form that her frequent migraines also interfere with her gainful employment.

(Tr. 437 (emphasis added)). Plaintiff does not challenge the ALJ's ultimate finding that her back pain was non-severe, which finding stands in contrast to Dr. Anderson's explanation that his "temporary disability" opinion was tied to Plaintiff's subjective report that her back pain precluded her from "the weight lifting required" for nursing jobs.

> She's had chronic intermittent low back pain which is now interfering more. She cannot do the weight lifting required for every nursing job that she

12

> inquires about. It appears she is disabled from her back and her migraines. She has never had a full back evaluation however.

(Tr. 439). The same report notes that her increase in migraines "is probably stress related" and expresses hope for improvement "with increased Topamax." (*Id.*) As noted by the ALJ, follow-up records dated September 2018 and February 2019 reflect that the increased Topamax was indeed at least partially effective. (*See, e.g.,* Tr. 435, 426).

### The ALJ's Evaluation of Plaintiff's Subjective Statements

Much of Plaintiff's brief focuses heavily on her subjective reports that her migraines were disabling. The ALJ acknowledged that Plaintiff "alleged that she experiences five incapacitating migraine headaches per week, which require sleep." (Tr. 29). However, the ALJ discounted Plaintiff's subjective reports after finding Plaintiff's statements to be "not entirely consistent with the medical evidence and other evidence in the record…." (Tr. 29).

The Court finds no reversible error. An ALJ's evaluation of subjective symptoms must be substantially supported by the record, but is entitled to such "great weight and deference" that some courts have described it as "virtually unchallengeable." *See Ritchie v. Com'r of Soc. Sec.*, 540 Fed. Appx. 508, 511 (6th Cir. 2013) (internal quotation marks and additional citation omitted); *Daniels v. Com'r of Soc. Sec.*, 152 Fed. Appx. 485, 488 (6th Cir. 2005).[9]

---

[9] SSR 16-3p describes the review of such symptoms as a "consistency" analysis, as opposed to earlier language in SSR 96-7p that used the term "credibility." SSR 16-3p refocused the ALJ's attention on the "extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304 at *2 (October 25, 2017) (emphasis added). The elimination of the term "credibility" in SSR 16-3p can be semantically awkward since the prior case law uses the catchphrase "credibility determination." Nevertheless, the essence of the regulatory framework remains unchanged. *See Duty v. Com'r of Soc. Sec.*, 2018 WL 4442595 at *6 (S.D. Ohio Sept. 18, 2018) ("existing case law controls to the extent it is consistent with the clarification of the rules embodied in SSR 16-3p's clarification.").

The ALJ discussed why Plaintiff's allegation of increased frequency in her migraines was not fully supported by the medical record, which included reports that she had been having 7 migraines per week during the time she continued to work full-time.

> The claimant's allegations are also undermined by the fact that she worked and functioned with her impairments for several years before her alleged onset date and thereafter her file contained insufficient evidence to show that her symptoms have worsened to the point where they would prevent her from working.
>
> Specifically, the claimant's 2013 treatment records listed that she had been having migraine headaches every night at two o'clock due to increased stress (8F/75). Thereafter, her file contained little to no evidence that her migraine headache symptoms have worsened. In addition, the claimant worked from 2010 through her alleged onset date with a right meniscus tear (2F/2). This evidence supports the conclusion that the claimant can perform a reduced range of sedentary exertional work activity.

(Tr. 32).

The ALJ also discussed the lack of evidence to support Plaintiff's allegation that the intensity of her migraines had worsened in March 2017:

> The claimant … testified that she had experienced worsening migraine headaches since age three. This evidence is significant because it shows that the claimant was able to work and function with migraine headaches for many years before her alleged onset date and thereafter her file contains insufficient objective evidence to show that her migraine headaches symptoms have greatly worsened to the point where they would now prevent her from performing the work activity described in the residual functional capacity.

(Tr. 30).

Plaintiff argues that the ALJ mischaracterized her testimony, and that he erred by suggesting at the hearing that Plaintiff had been "able to work with [migraines]" and had "adapted [her] behavior" to allow it. (Tr. 74). But the ALJ's analysis is substantially supported by Plaintiff's testimony at the hearing.

For example, Plaintiff clearly testified that she did work through her migraines:

14

> Q: If it hit you while you were working, what did you do?
>
> A: Work on. That's what you do when you're at work. There is no one to take your place….
>
> …
>
> A: I worked and started patient's IV's and gone in the bathroom, thrown up, come back out, got another patient and took care of them, gone to the bathroom and thrown up, gone back and taken care of somebody else.
>
> Q: So, the migraines didn't necessarily keep you from working, but they didn't help?
>
> A: Would you want to work like that?
>
> Q: No way. But it sounds like you were able to work with them. You adapted your behavior to.
>
> A: You have to. There is no one else. There is no one else to take your place.

(Tr. 73-74).

Later in the hearing, the ALJ asked Plaintiff whether she believed she could go back to work as a director of nursing services. (*See* Tr. 88, "What do you have to tell me to convince me that …you could not work as a director of nursing services?"). Plaintiff responded that she was unsure "about my hireability" due to being out of the work force for the past two and a half years, but then responded that she "might" be able to work: "[I]f someone were to come to me and say, hey, take a chance on me, I might." (Tr. 89). Her primary concern was that a director of nursing has "to step up if someone calls in sick," and that her physical limitations would preclude floor nursing work.[10] (*Id.*) Thus, Plaintiff's own testimony substantially supports the ALJ's analysis.

In addition to Plaintiff's testimony, the ALJ cited inconsistent and non-supporting objective and clinical medical evidence, discussed above, that suggested

---

[10]The RFC as determined would not allow for floor nursing work, but the VE testified that Plaintiff could perform the Director of Nursing job as that position is defined in the DOT.

15

her symptoms were adequately managed with routine care and medication. (*See generally* Tr. 30-32). Relevant to that point, Plaintiff testified at the hearing that she is able to stop symptoms like "intractable vomiting" so long as she takes her medication before symptoms increase. She testified that she had successfully done so and "caught [a migraine] in time" the day of the hearing "when I started coming here." (Tr. 73)

Finally, the ALJ discussed other subjective reports that reflected that Plaintiff can care for her personal needs, ambulate without assistance, drive, access the internet and read. (Tr. 29). At the hearing, Plaintiff testified that she would be able to complete a two hour drive with only one stop to stretch out her "bad knee," not because of headache pain. (Tr. 67). She testified that she does chores, reads, enjoys looking at the computer including Facebook, talking on the phone to friends, and often drives to friends' homes. (Tr. 69). Plaintiff similarly stated in a written report that she enjoys reading, watching TV and music, visits friends weekly and goes to movies, despite stating that her social activities had "decreased" since her alleged disability onset date. (Tr. 243). In another function report, Plaintiff's mother stated that Plaintiff reads and watches TV daily, visits friends once a week, and goes out to lunch at restaurants weekly. (Tr. 225, 232). Plaintiff's mother also reported that Plaintiff cares for two dogs, prepares meals, walks, drives and manages bank accounts. (Tr. 32; *see* Tr. 220-228).

Additionally, both Plaintiff and her mother reported that Plaintiff had no difficulties in her ability to remember, concentrate, complete tasks, understand, or follow instructions. (Tr. 225, 244). As for changes in routine and stress, Plaintiff's mother reported that Plaintiff handles both "very well," and Plaintiff agreed that she is

16

"good" at handling stress. (Tr. 227, 245).  In fact, Plaintiff stated that she could pay attention "indefinitely," (Tr. 244), while her mother stated that she could pay attention for "hours."  (Tr. 226).  In other words, both Plaintiff and her mother provided multiple statements suggesting that Plaintiff would not be off-task but could effectively persevere and work through her migraine symptoms.

In sum, the RFC as determined is substantially supported.  Because the hypothetical RFC formulated by the ALJ is supported by the record, the vocational expert's testimony that such an individual can engage in her prior relevant work constitutes substantial evidence to support the non-disability determination.  *See Varley v. Sec'y of HHS*, 820 F.2d 777 (6th Cir. 1987).

### III.  Conclusion and Recommendation

For the reasons explained herein, **IT IS ORDERED THAT** Defendant's decision be **AFFIRMED** as supported by substantial evidence, and that this case be **CLOSED.**

 */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

17